## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVON LYMON,

        Plaintiff,

v.                                          CV-08-386 JB/DJS

ARAMARK CORPORATION, JOSEPH NEUBAUER,
CHARLIE CARRIZALES,BERTHA BENAVIDEZ,
JOHN SANCHEZ IN HIS OFFICIAL CAPACITY
AND INDIVIDUAL CAPACITY,  ABNER HERNANDEZ
IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,
JOE WILLIAMS as SECRETARY
OF THE NEW MEXICO DEPARTMENT
OF CORRECTIONS IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY, and the NEW MEXICO
DEPARTMENT OF CORRECTIONS,

        Defendants,

## PLAINTIFF DAVON  LYMON'S  FIRST AMENDED  COMPLAINT FOR NEGLIGENCE, BODILY INJURY AND CLAIMS UNDER 42 U.S. C. SECTIONS 1983 AND 1981

COMES NOW Plaintiff Davon Lymon, and, pursuant to Rule15 of the Federal Rules of Civil

Procedure, hereby submits his First Amended  Complaint. At a  Hearing, in Federal Court, on January

30, 2009, the court granted Plaintiff Davon Lymon's motion to Amend his Complaint for the First

Time. The Court ruled that the filing of the First Amended Complaint shall signify service on all

defendants with the exception of Bertha Benavidez who must be served with Notice of the Complaint

anew. For his Complaint for damages Plaintiff states:

        1.      At the time of events described in this Complaint, Plaintiff was an inmate at the Central

New Mexico Correctional Facility in Valencia County, Los Lunas, New Mexico.

1

2.     At all times material to this Complaint John Sanchez was a public employee who was acting within the scope of his duties as a corrections officer of the New Mexico Department of Corrections.

3.     At all times material to this Complaint, Abner Hernandez was an employee of the New Mexico Department of Corrections with the rank of captain.

4.     At all times material to this Complaint, defendant Joe Williams was Secretary of the Department of Corrections for the state of New Mexico.

5.     At the time of events in this Complaint, the New Mexico Department of Corrections had a contract with Aramark corporation to manage the prison kitchen at the Central New Mexico Correctional facility.

6.     Defendants Bertha Benavidez and Charlie Carrizales were employees of Aramark who worked in the prison kitchen. Joseph Neubauer was Aramark's owner and supervisor.

Jurisdiction and venue are proper with this court pursuant to the Thirteenth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. Section 1983 with jurisdiction authorized and conferred by 28 U.S.C. Sections 1331 and 1343; The New Mexico State Constitution Article II Section 4; NMSA 1978 Section 38-3-1 (1988); the Tort Claims Act, NMSA 1978  Sections 41-4-4 thru 41-4-29(Michie 1989 & Cum. Supp. 2005); 42 U.S.C. 1981; U. S. C. A. Const. Art. 6.

## PLAINTIFF'S STATEMENT OF FACTS

7.     Prior to the time of events in this Complaint, Plaintiff had a pre-existing injury. Plaintiff's left shoulder rotator cuff had been surgically repaired.

8.     Prison policy requires that all prisoners receive medical clearance prior to being assigned to work in the prison kitchen for defendants Aramark, Neubauer, Benavidez and Carrizales.

9.     Plaintiff did not receive a medical clearance prior to being assigned to work in the prison kitchen.

2

10    John Sanchez is a prison classification officer. Sanchez classified the Plaintiff to work in the prison kitchen contrary to prison policy and contrary to Plaintiff's medically ordered physical limits. Sanchez has done this to hundreds of men in the prison.

11.    Contrary to the Corrections Industries Act, Plaintiff did not volunteer for employment by the Aramark Corporation.

12.    Defendant Aramark has entered into a contract with the New Mexico Corrections Department. This contract requires Aramark, Neubauer, Benavidez and Carrizales to comply with all New Mexico state laws and all prison policies. This contract also requires these defendants to protect all of Plaintiff's legal rights.

13.    On September 23, 2004 a prescription was placed in Plaintiff's medical records at the prison, stating that Plaintiff was prohibited from lifting objects with his left arm. This was a continuing and ongoing medical requirement as a result of surgery.

14.    Nurse Jessica Garcia issued a prison health services pass/lay-in slip pursuant to a request by defendant Bertha Benavidez. This pass/lay-in slip re-stated the prohibition of lifting by the Plaintiff. Defendants Benavidez and Carrizales refused to acknowledge the medically identified limitations.

15.    Contrary to the prison health services pass/lay-in, defendants Benavidez and Carrizales assigned the Plaintiff kitchen jobs that required heavy lifting. This abuse  of convict labor was encouraged by defendants Aramark and Neubauer. These defendants have issued and published a business conduct policy. This policy requires Aramark and its employees to provide each inmate employee with a safe and healthy work environment. This policy was published for deceptive propaganda purposes. Defendant Neubauer encourages the abuse of convict labor and false reporting of contract compliance by Carrazales. Defendant Neubauer is the chief executive officer of the Aramark Corp and is the majority stock holder of record.

3

16.     On July 3, 2005 at 1:00 pm defendant Benavidez ordered the Plaintiff to do the back

porter job. This job requires frequent heavy lifting. Plaintiff re-newed his request to Benavidez to not

order work contrary to orders from the medical staff.  Benavidez refused and ordered the Plaintiff to

do the assigned job.

17.     A short time after he was ordered  to do the heavy lifting, while lifting heavy trays in the

dishroom the Plaintiff's left shoulder gave out. This caused  the Plaintiff to slip and fall. He suffered

severe pain and had to seek medical care.

18.     Plaintiff filed two informal grievances concerning this matter. Captain Abner Hernandez

refused to grant permission for the Plaintiff to use the prison grievance process. Captain Hernandez

claimed the grievance was resolved. The stated reason was Plaintiff was not medically cleared to work

in the prison kitchen.

### COUNT I: NEGLIGENCE AND PERSONAL INJURY CAUSED BY DEFENDANT JOHN SANCHEZ UNDER THE TORT CLAIMS ACT SECTIONS 41-4-6 AND 41-4-12

19.     Plaintiff realleges paragraphs 1 through 18.

20.     Originally thought of as a premises liability exception to the waiver of governmental

immunity, the meaning of Section 41-4-6 has been expanded by the Courts to encompass other areas

of liability. Liability has been found for prisoners who were beaten by roving gangs of prisoners, wild

roving dogs on governmental property and state fair guards who did not have discretion to disobey

a parking attendant's order . Plaintiff contends that having a classification officer who disregards the

orders of  a doctor and other medical professionals (such as nurse Jessica Garcia), is comparable to

having a classification officer place an inmate with a loaded shotgun in the prison population, or

classify an inmate with a deadly infection, for activity and contact, with healthy inmates. The reason

for this caution is because a classification officer does not know what medical complications can occur

which might represent a danger to other prisoners or to the public at large.

21.     John Sanchez' conduct in classifying Plaintiff was negligent at two levels. First the placement of Plaintiff in the kitchen provided Aramark's employees with the opportunity to make Plaintiff do heavy lifting which contradicted the doctor's orders. When Plaintiff's shoulder collapsed while he was doing heavy lifting, he suffered a Slip and Fall accident. John Sanchez's conduct in disregarding the doctor's orders was primary in the chain of causation of the Plaintiff's Slip and Fall accident.

22      John Sanchez has negligently misclassified other inmates with medical conditions creating a danger for the inmate population. Two inmates Plaintiff has personal knowledge about are Adolfo Chavez Jr and Philip Lopez who were inmates at the central New Mexico Correctional facility in Los Lunas, New Mexico. In addition:

1.  John Sanchez has negligently misclassified inmates with known hepatitis viruses and
2.  tuberculosis to work in the kitchen where infections to other inmates can occur.

24      When John Sanchez renounces his classification status to deliberately disobey the orders of a medical doctor, his status reverts back to that of being a regular law enforcement officer much the same as his status would change in the case of a prison uprising. In this circumstance his conduct would be entirely that of a law enforcement officer and would fall within the waiver of a law enforcement officer under Section 41-4-12 of the Tort Claims Act. The intentional act of placing Plaintiff in the kitchen where he might be injured was negligent and wrongful. Sanchez had a duty as a corrections officer to provide protection and a safe environment for Plaintiff who was an inmate. Sanchez breached that duty by placing the inmate in the kitchen where he might be hurt. Plaintiff suffered injuries which were caused by Sanchez' conduct

### COUNT II: NEGLIGENCE AND PERSONAL INJURY CAUSED BY DEFENDANT CAPTAIN ABNER HERNANDEZ UNDER THE TORT CLAIMS ACT SECTIONS 41-4-6 AND 41-4-12

25      Plaintiff realleges paragraphs 1 through 24..

26.     Captain Hernandez denied Plaintiff the use of the prison grievance process on the basis

that Plaintiff had not been medically cleared to work in the kitchen, even though corrections officer John Sanchez had placed Plaintiff in the kitchen and Aramark employees had forced him to do work which was detrimental to his health.  Fully aware of these facts, captain Hernandez still refused to allow Plaintiff to file a grievance. Plaintiff was denied a Hearing on his grievance thus denying him a due process right to a hearing on the fact of, and, the reason for his injuries. The fact that an injury had already occurred to Plaintiff because of a lack of medical clearance did not nullify the grievance process.

27.     Captain Hernandez' conduct in denying Plaintiff's appeal for a grievance served to protect the Corrections Department personnel and the Aramark  defendants from any responsibility for their unlawful behavior.

28     By denying Plaintiff the opportunity for a Hearing, Abner Hernandez maintained a policy which affects a  whole segment of inmates. This group consists of inmates with medical conditions who have been injured because of unlawful conduct on the part of employees of the Department of Corrections. The denial of an appeal by Hernandez meant there would be no  scrutiny or accountability for the actions of the employees of the Department of Corrections. The act of denying Plaintiff a grievance, after an injury, constitutes a negligent action in maintaining and operating the prison's physical premises because it maintains a certain policy. This policy denies redress for grievances to an entire segment of the inmate population, with medical conditions, who have been injured while doing work they were not medically cleared to do.

29.     By denying Plaintiff the opportunity to file a grievance, captain Hernandez allowed Aramark Corporation, a private entity and its employees to abuse inmate labor without remission because the inmate has no way to seek redress for his grievance.

**COUNT III: NEGLIGENCE AND RESPONDEAT SUPERIOR OF DEFENDANT JOE WILLIAMS SECRETARY OF THE DEPARTMENT OF CORRECTIONS**

6

**STATE OF NEW MEXICO UNDER THE TORT CLAIMS ACT SECTIONS 41-4-6 AND 41-4-12**

30.   Plaintiff realleges paragraphs 1 through 29.

31    At all times material herein, the aforementioned acts and omissions were committed by individuals employed by, agents of, agents with apparent authority, supervisory personnel of the Department of Corrections, prison guards, correction officers, wardens, and/or kitchen personnel employed by Aramark Corporation all either directly employed or engaged in a contractual relationship with the New Mexico Department of Corrections, thereby making Joe Williams as Secretary of the Department of Corrections, liable under a theory of Respondeat Superior and also liable under a theory of failure to establish standards, practices, policies, procedures to deal with medical complications which arise from the placement of inmates who are given work which exceeds the limitations ordered by their physicians, of the type encountered in the case of Davon Lymon, and failure in the selection, hiring, and supervision of food/kitchen contractors like Aramark Corporation.

32.    Employees, agents, agents with apparent authority, corrections department employees, and/or food/kitchen personnel under contract to the New Mexico Department of Corrections at all times material hereto, acting within the course and scope of their employment, failed to use ordinary care in management, supervision, and oversight of Davon Lymon's medical condition and work assignments that a reasonable and prudent food/kitchen facility/provider would have provided under the same or similar circumstances by the following acts and/or omissions, including, but not limited to:

   a.    Failure to train prison guards about how to handle prisoners who have pre-existing medical conditions and are required to do work for private contractors where the limitations ordered by a physician restrict what the inmate can or can not do.

   b,    Failure to train corrections officers, concerning the importance of honoring additional

7

medical evidence of disability such as happened in Plaintiff's case where nurse

Jessica Garcia provided the pass/lay-in document which re-stated the prohibition

of heavy lifting on June 22, 2005.

c     Failure to monitor private contractors to make certain that inmates classified to work

for private contractors are provided with a safe, healthy work environment.

d.     Maintaining a policy of disallowing grievance appeals where inmates are injured while

working for private contractors where a doctors orders were over-ruled by both the

Department of Corrections officers and employees of a private contractor.

33.     As a direct and proximate result of the aforementioned negligence, Plaintiff has

experienced pain and suffering as a direct and proximate result of Defendant's

negligence including but not limited to, serious and permanent damage to his

shoulder. In addition, Plaintiff will continue to endure medical treatment in the

present and in the future.

### COUNT IV: NEGLIGENCE AND RESPONDEAT SUPERIOR OF DEFENDANT  THE NEW MEXICO DEPARTMENT OF CORRECTIONS UNDER THE TORT CLAIMS ACT SECTIONS 41-4-6 AND 41-4-12

34.     Plaintiff realleges paragraphs 1 through 33.

35.     At all times material herein, the aforementioned acts and omissions were committed

by individuals employed by, agents of, agents with apparent authority, corrections

officers, wardens, food/kitchen personnel employed by the Corrections Department

or contractors engaged in a contractual relationship with the Department  of Corrections

thereby making Defendant liable under a theory of Respondeat Superior and liable under

a theory of failure to institute procedures, policies and practices which would provide

adequate working conditions for inmate laborers who are placed  for work under private

contractors. The Defendant failed to use ordinary care in providing management,

supervision, and oversight of Davon Lymon's medical condition and work conditions that a reasonable and prudent food/kitchen facility/provider would have provided under the same or similar circumstances by the following acts/or omissions, including, but not limited to:

a.   Failure to provide day to day supervision of the Aramark Corporation food/kitchen work place creating a danger to the health and safety of the inmate population.

b.   Failure to provide a grievance procedure for the specific problem encountered by Plaintiff wherein he was injured in the services of a private contractor who ignored a physician ordered limitation on his work conditions.

c.   Failure to have in place policies, procedures, or practices which require medical clearance prior to assigning inmates to work in the prison kitchen.

d    Violating the Corrections Industries Act pertaining to inmate work for private contractors.

e.   Failure to require Aramark Corporation and its employees to abide by all New Mexico State laws and prison policies in dealing with inmate laborers.

**COUNT V: VIOLATIONS OF RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. SECTION 1983**

36.   Plaintiff realleges paragraphs 1 through 35.

37.   Plaintiff had a liberty interest in protection from abuse of inmate labor by the actions of New Mexico Department of Corrections employees John Sanchez and Abner Hernandez. These officers abused Plaintiff by forcing him to work for a private contractor in violation of the Corrections Industries Act. Officer Sanchez intentionally over-ruled the orders of a physician in order to assign Plaintiff to do work in the prison kitchen in violation of the medically ordered prohibition against heavy lifting. Officer

Hernandez denied Plaintiff due process by disallowing any grievance appeal by Plaintiff after his injury at work in the prison kitchen.

38   Plaintiff states that each and every act alleged in this complaint was done by the New Mexico Corrections Department employee defendants, not only as individuals, but under the color and pretenses of the statutes, ordinances, regulations, customs, and usages of the State of New Mexico, and the rules, policies, and direction of the New Mexico Department of Corrections, having been clothed with both actual and apparent authority.

39.   As a direct and proximate cause of the wrongful acts of the defendants, the Plaintiff Davon Lymon suffered injury to his already damaged shoulder, humiliation, mental anguish, severe emotional distress, loss of liberty and injuries from a slip and fall. He lost his statutory right to a safe and healthy prison environment, proper medical care and healthy food.

40.   Corrections officers John Sanchez and Abner Hernandez failed to possess and apply the knowledge and skill, ordinarily used by a reasonably well-qualified corrections officer acting under similar circumstances. Officer Sanchez' deliberate over-ruling of the physician's order to limit heavy lifting by assigning Plaintiff to a work place where he would be required to do heavy lifting was sadistic and mean spirited. This conduct by officer Sanchez SHOCKS THE CONSCIENCE OF THE COURT because Plaintiff was incarcerated and had no redress for his grievances because officer Abner Hernandez denied Plaintiff any avenue of grievance or appeal. Violations of Plaintiff's constitutional rights by John Sanchez affected basic life needs of medical care and food because:

a.   Officer Sanchez over-ruled a doctor's order and a nurse's order (See report by

10

nurse Jessica Garcia June 22, 2005), to assign Plaintiff to a work place where heavy lifting was required. This caused Plaintiff to re-injure an already damaged shoulder.

b.      Assigned inmates to the kitchen with illnesses which had the potential to spread these illnesses to other inmates.

c.      Encouraged private contract employees to abuse inmate labor by ignoring physician ordered limitations because of their medical illnesses.

41      Defendants were deliberately indifferent to the rights of Plaintiff because they did nothing as officers Sanchez and Hernandez violated several rules, regulations, statutes and laws including but not limited to:

a.      The requirement that all prisoners receive medical clearance prior to being assigned to the prison kitchen.

b.      The Corrections Industries Act.

c.      Violation of prison health services pass/lay-in policies.

42.     The Corrections Department had no policy or penalty for the combination of simultaneous abuse of inmate labor by both the employees of the State and a private company as occurred in Plaintiff's case. The corrections officers assigned inmates to private companies knowing the private contractors would abuse them.

43.     The conduct of defendants was not objectively reasonable because the laws on the constitutional violations were well established in the district courts, the New Mexico appellate courts and the 10th circuit.

**COUNT VI: VIOLATIONS OF CIVIL RIGHTS SECTION 42 U.S.C. 1981 THROUGH SECTION 42 U.S. C. 1983**

44.     Plaintiff realleges paragraphs 1 through 43.

45.     Section 42 U.S.C. 1981 assures equal contracting rights without regard to race. It

11

It entitles blacks, " ... To make and enforce contracts...and to the full and equal benefit of all laws...as is enjoyed by white citizens...." Plaintiff is African-American.

46. Several contractual relationships existed among the various actors described in Plaintiff's Complaint. A written contract existed between Aramark Corporation and the New Mexico Corrections Department. There was an oral contract between Plaintiff and Aramark Corporation. The contractual relationship between Aramark and Plaintiff also had elements of a contract in Fact and a contract in Law. When John Sanchez over-ruled the doctors orders and the nurse's note prohibiting heavy lifting by Plaintiff, he terminated the contract Plaintiff had with Aramark to work without having to do heavy lifting.

47. The instant connection between the action of Sanchez and the action of the Aramark employees in forcing Plaintiff to do heavy lifting demonstrates causal a connection between the racist action of Sanchez and the termination of the non-heavy lifting contract with Aramark.

48. This disparate treatment of Plaintiff, the black prisoner, shows an intent to harm Davon Lymon because of his race. The employees of the private contractor continued this racist behavior by forcing Plaintiff to perform heavy lifting tasks against his will. All this was done in spite of the Plaintiff begging the employees to abide by the doctor's orders restricting heavy lifting by Plaintiff.

49. The virulence with which John Sanchez pursued his singular persecution of Plaintiff in forcing him to do tasks prohibited by the doctor, is also further evidence of John Sanchez' racist animus toward Plaintiff.

50. Section 1981 allows for respondeat superior charges against State actors and Private actors. In the instant Cause, John Sanchez serves as the agent for the Department of

Corrections and Joseph Neubauer, Bertha Benavidez and Charlie Carrizales serve as agents for Aramark Corporation.

## COUNT VII: VIOLATIONS OF THE FOURTEENTH AMENDMENT THROUGH 42 U.S.C. 1983 BY DEFENDANT JOE WILLIAMS

51.    Plaintiff realleges paragraphs 1 through 50.

52    Secretary of Corrections Joe Williams' conduct exhibited a custom, unwritten policy or usage of having his department ignore the substandard food/kitchen service provided by Aramark Corporation. The numerous complaints by inmates, lawsuits and media exposure served to notify Joe Williams of the below standard food/kitchen service being provided by Aramark. One area where Plaintiff seeks prospective legal relief is the prohibition of placing inmates with known transmissible diseases on work duty in the prison kitchen.

53.    The constitutional violations in this case were extremely serious consisting of severe pain, permanent damage to Plaintiff's shoulder, basic medical care and involuntary servitude. These deprivations occurred in a prison setting where the inmate couldn't help himself. It was foreseeable by Joe Williams that this custom of substandard service by Aramark would have a more devastating impact on an inmate population

54    One reason Joe Williams' conduct SHOCKS THE CONSIENCE is the setting of abuse of convict labor. Plaintiff was incarcerated and could not pursue measures which would benefit his own cause. He was even denied an appeal through the grievance process.

55.    As manager of the Corrections Department, Joe Williams had a duty to provide a system for the day to day assessment of the quality of service provided by the private contractor food/kitchen providers. By providing no system of oversight, Joe Williams showed deliberate indifference to inmates such as Plaintiff. This type of conduct serves to shock the conscience of the court.

13

56.   The law concerning inmate medical service and food/kitchen service was clearly established at the time the constitutional violations of Plaintiff' rights occurred.

**COUNT VIII: VIOLATIONS OF THE FOURTEENTH AMENDMENT THROUGH 42 U.S. C. SECTION 1983 BY THE CORRECTIONS DEPARTMENT**

57.   Plaintiff realleges paragraphs 1 through 56.

58.   The Corrections Department had a custom, usage or policy of allowing classification officers wide spread freedom in the placement of inmates irrespective of doctors orders or the peculiar circumstances of a work place environment. Plaintiff's initial Complaint and his Amended Complaint demonstrate this custom, usage or policy in action. In paragraph seven(# 7) Plaintiff states, "...Sanchez classified the Plaintiff to work in the kitchen contrary to prison policy and contrary to the Plaintiff's medically ordered physical limits...." Again in paragraph twenty-two(# 22) the Plaintiff states, "...John Sanchez has negligently misclassified inmates to work in the kitchen with known transmissible viral illnesses and infectious diseases such as tuberculosis...." Plaintiff seeks prospective relief, enjoining the Corrections Department from placing inmates with known infectious diseases such as tuberculosis and other transmissible diseases from working in the prison kitchen.

59.   The corrections department failed to train corrections officers about how to deal with health care issues concerning personnel who work around food preparation. Common health care precautions involving food preparation which are in effect in every village and township in the State were daily ignored by the employees and administrators of the Corrections Department.

**COUNT IX: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH 42 U.S.C. SECTION 1983 BY ARAMARK**

60.   Plaintiff realleges paragraphs 1 through 59.

14

61.    Aramark's conduct is subject to constitutional scrutiny because of its role under the

State Action Doctrine. The provision of food to inmates is a State function. Aramark

had a policy of disregarding medical clearance requirements and doctor ordered physical

limitations on individual inmates. It was this policy which led to Plaintiff being forced

to do heavy lifting when it was prohibited by doctors orders. It was this policy which

led to inmates working in the kitchen with known transmissible viral illnesses. This

policy also led to an inmate working in the kitchen with highly contagious infectious

illnesses such as tuberculosis.

62.    Defendants' knew of Plaintiff's pre-existing medical condition and the recurring

misclassification of inmates by John Sanchez. They also knew that heavy lifting

would damage Plaintiff's shoulder. The callous attitude toward these facts demonstrates

deliberate indifference to Plaintiff's plight as an inmate which shocks the conscience of

society's evolving standards of decency.

**COUNT X: VIOLATIONS OF THE FOURTEENTH AMENDMENT
THROUGH 42 U.S.C. SECTION 1983 BY ARAMARK EMPLOYEES
CHARLIE CARRIZALES AND BERTHA BENAVIDEZ**

63.    Plaintiff realleges paragraphs 1 through 62.

64.    Aramark employees Carrizales and Benavidez exhibited a pattern, custom or

of ignoring inmates legitimate complaints because of preconceived notions about

inmates in general. This policy of believing that all inmates lie about their

medical disabilities plus detrimental, innate racial biases led to intentional

harmful behavior toward Plaintiff.

65.    The custom, usage or policy of Carrizales and Benavidez to force inmates to do work

which was prohibited by doctor's orders deprived Plaintiff of the right to be free of

involuntary servitude. This usage or policy created a danger through the food chain to

15

Plaintiff and other inmates because it permitted inmates with known infectious diseases to work in the prison kitchen where the likelihood of infecting other inmates was high. This conduct showed a state of mind with the purpose to deprive Plaintiff of his constitutional right to healthy food and a safe and healthy environment in the prison.

## COUNT XI: SUPERVISORY LIABILITY OF JOSEPH NEUBAUER THROUGH THE FOURTEENTH AMENDAMENT AND 42 U.S.C SECTION 1983

66.   Plaintiff realleges paragraphs 1 through 65.

67.   Defendant Neubauer is the chief executive officer and major stockholder in the Aramark Corporation. Neubauer was aware of the fact that Carrizales and Benavidez refused to acknowledge the physical limitations on the type of work inmate Davon Lymon could perform. Defendant Neubauer was aware of the fact that inmates were allowed to work in the kitchen without medical clearance. Neubauer did not pursue any measures which would rectify this problem. Defendant Neubauer was aware of the dangers created by allowing inmates with known contagious viral illnesses to work in the prison kitchen.

1.   Defendant Neubauer was aware of the repeated violation of the Corrections Industries

Act which governed the first screening of inmates to work in the kitchen. Neubauer had a personal responsibility for the constitutional violation of Plaintiff's rights.

69.   The constitutional violations of Plaintiff's rights and the rights of other inmates are affirmatively linked to Neubauer because he issued and published a business conduct policy that Aramark was in compliance with the policy of providing a safe and healthy work place environment which he knew to be false.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANTS CARRIZALES AND BENAVIDEZ

70.   Plaintiff realleges paragraphs 1 through 69.

16

71.     When Plaintiff protested to Carrizales and Benavidez about the medical limitations on doing heavy lifting, these two employees refused to acknowledge either the statement by the doctor or nurse Garcia.This intentional conduct demonstrated the intent of Carrizales and Benavidez to harm Plaintiff because he had no way to fight back.

72.     The additional act of forcing Plaintiff to actually do heavy lifting superimposed upon the refusal to acknowledge the orders of the medical professionals presented a powerful ,moving force in driving Plaintiff into involuntary servitude.

73.     The conduct of defendants in ordering Plaintiff to do work that was physically harmful to him was **utterly intolerable** because as lay people they refused to abide by the directives of two medical professionals, a nurse and a physician plus the protests of the suffering inmate.

74.     The conduct of defendants in ordering Plaintiff to do work that was physically harmful to him **was beyond all possible bounds of decency** because Plaintiff was a prisoner, locked up and at the mercy of defendants. Plaintiff had no resources, no power, no means of communication to call for help or procedure in place to help himself. The defendants intimidated and terrified Plaintiff. They used the contract with the Corrections Department as a weapon of punishment against a man already in a place of terror and fear. They exploited the inmate's fears of future punishment if he didn't comply with their orders.

75.     The conduct of defendants in ordering Plaintiff to do work which they knew was harmful to him was outrageous because the defendants owed Plaintiff an independent duty of care by virtue of his status as an inmate employee. Defendants conduct by forcing Plaintiff to do work which was harmful to him medically, on several occasions, and his inmate status, meets **The force of repetition and totality of the circumstances**

17

**tests** for extreme and outrageous conduct causing emotional distress.

**COUNT XIII: INFLICTION OF INVOLUNTARY SERVITUDE(SLAVERY) IN VIOLATION THE THIRTEENTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

76.   Plaintiff realleges paragraphs 1 through 75.

77.   Defendants conduct in ordering Plaintiff to do work that was harmful and violated

medical directives directed to them, has all the indices of slavery. Here the inmate was

forced to do  work that was painful and harmful to him. One classical element of slavery

is the person could not be brave in the face of it. Here the defendants forced Plaintiff

against his will and forced him to do the work. They had absolute power over Plaintiff.

Punishment and the threat of punishment were key factors in slavery. The key action the

defendants did to  deny Plaintiff the ability to be brave in the face of the adverse action,

occurred when Plaintiff showed defendants the documentation that he was not to do any

heavy lifting and the defendants summarily ignored the doctor's statement and ordered

Plaintiff to go to work.

78.   Another indicia of slavery present in the interaction between defendants and Plaintiff is

the quality control of punishment. This element of slavery was essential to the institution

of slavery, because the value of the slave, was that even though he was controlled by

intimidation, terror, fear and brutality, it was  still necessary that he be able to work. For

example, if he was punished to the point of major depression, he would be unable to

work. But if the quality of punishment was controlled to the point of making him a

human ox, then he was a good  property investment. In Plaintiff's case, he faced the

threat of punishment in the form of placement in isolation, loss of good time credits,

placement in the most violent cell blocks and restriction of commissary privileges and

other punishments. The act  of  repetitively sending him back to work until he was

damaged physically was a form of quality control of punishment.

79.   Another element of slavery was the necessity of having the slave show that his mind had accepted the control and punishment forced upon him. The three acts of defendants in meeting this element were: 1) Blatant disregard of Plaintiff's statements about his medical condition; 2) Blatant disregard of the Nurse's statement concerning the prohibition of heavy lifting; 3) Blatant disregard of the doctors statement of the prohibition of heavy lifting.and 4) Forcing heavy duty work upon Plaintiff. repeatedly.

80.   Plaintiff had a liberty interest in being free of intimation, terror and threats of punishment used to force him to do work which was detrimental to his health.

**COUNT XIV: JOHN SANCHEZ' CLASSIFICATION DECISIONS ARE VIOLATIONS OF THE UNITED STATES CONSTITUTION ART. 6**

81.   Plaintiff realleges paragraphs 1 through 80.

82.   State of New Mexico Case law immunizes Corrections officers from legal action based upon decisions made in the classification of prisoners.Plaintiff alleges threats to public health when Sanchez classifies prisoners with obvious infections and infectious diseases to work in the prison kitchen. These decisions by Sanchez represent a threat to public health. In a time of national threats from biological warfare, any decision which places the public at risk from a health hazard, is against federal policy.The Supremacy Clause prohibits states from frustrating federal policy either through legislation or judicial interpretation in certain areas of the law.

83.   The immunization of classification decisions by John Sanchez which only harm one inmate from legal action is also violative of federal policy.

19

**CONCLUSION**

WHEREFORE, Plaintiff Davon Lymon , prays for judgment against defendants Aramark

Corporation, Joseph Neubauer, Charlie Carrizales, Bertha Benavidez, John Sanchez, Abner Hernandez

Joe Williams Secretary of the New Mexico Department of Corrections, and New Mexico Department

of Corrections, for compensatory damages in an amount to be determined at trial, for pre-judgment

and post-judgment interest, for punitive damages against  defendants not sued under the Tort Claims

Act, for his costs, and for such and further relief as the court deems just and

proper.

Respectively Submitted

SOLOMON BROWN
Attorney at Law
P.O. Box 40747
Attorney for Plaintiff
 Phone  (505) 265-5721

20

Respectively Submitted
ELECTRONICALLY FILED

By: /s/ Solomon Brown
    SOLOMON BROWN
    P.O. BOX 40747
    Albuquerque, New Mexico 87196
    Phone (505) 265-5721
    Attorney for Plaintiff

I HEREBY CERTIFY that on February 13, 2009
I filed the foregoing electronically through the CM/ECF
to be served by electronic means, as more fully reflected
on the Notice of electronic Filing:

Attorneys for Aramark Corporation, Joseph Neubauer, Charlie Carrizales, and Bertha Benavidez

Theresa W. Parrish
Rodey, Dickason, Sloan, Akin & Robb PA
e-mail: twparris@rodey.com
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone (505) 765-5900
Facsimile: (505) 768-7395

Attorneys for Defendants John Sanchez, Abner
Hernandez, Joe Williams, and New Mexico
Department of Corrections

Sean Olivas
Keleher & McLeod, PA
P.O. Box AA
Albuquerque, New Mexico 87103
Telephone: (505) 346-9140
e-mail:so@Keleher-law.com

ELECTRONICALLY FILED

By: /s/  Solomon Brown
attysolbrown@qwestoffice. net

## <u>VERIFICATION OF PLAINTIFF'S COMPLAINT</u>

I Davon Lymon being first duly sworn by law affirm and state that the facts herein stated are

true, correct and within my personal knowledge.

Davon Lymon

Subscribed and sworn to me this 13 th day of February, 2009

Notary

Expires  06/16/12